## 1UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

WILLIAM H. ARMSTRONG, et al.,    )
        Plaintiff,           )
                      )
    v.                  )     Civil Action No. 1:07-cv-01963-JR
                      )
HENRY M. PAULSON, JR., et al.    )
        Defendant.         )
                      )

## MOTION TO STRIKE AGENCY'S RULE 26(a)(1) SUBMISSTION; REQUEST FOR MONETARY SANCTIONS

Comes now the Plaintiff William "Harry" Armstrong, by and through counsel and requests that this Court strike the Defendant's Rule 26(a)(1) disclosure on the grounds that the submission contains inaccurate facts, violates a settlement agreement made in the administrative phase of a related action before the Merit Systems Protection Board (MSPB) and represents a public disclosure of untrue and derogatory facts in its own right, and is an expression of the underlying maliciousness and/or ineptitude that led to the instant federal action under the Privacy Act. As grounds for this Motion, Plaintiff states as follows:

On October 30, 2007, Mr. Armstrong filed the instant Complaint alleging that his then supervisor Rodney Davis and perhaps others in the Treasury Inspector General for Tax Administration's (TIGTA's) office had, in an effort to interfere with and derail Mr. Armstrong's employment offer from the U. S. Department of Agriculture ("Agriculture") and as part of further reprisal against Mr. Armstrong, sent a series of letters to Agriculture which violated the Privacy Act as to TIGTA and were acts of defamation by Mr. Davis, individually.[1]

---

[1] On April 11, 2008, Mr. Armstrong's various Federal Tort Claims arising out of these disclosures will ripen. As was expected, the Agency has made no effort to investigate or address these claims, which is hardly surprising since the investigative arm for the Treasury Department on such matters would be its Inspector General's Office.

The submissions to Agriculture had their intended effect. The previously approved offer of employment was placed on hold and has been effectively withdrawn. Further, it now appears from the Agency's 26(a)(1) disclosure that agents of TIGTA, without Mr. Armstrong's knowledge or approval, contacted Agriculture to discuss Plaintiff's application for employment with Agriculture. *See,* Defendant's Rule 26(a)(1) submission at 6.

On December 4, 2007, the Agency issued a Notice of Removal to Mr. Armstrong. As the Court is no doubt aware, under the federal personnel disciplinary scheme, federal employees have only the right to reply to a proposed notice or removal and have no right to conduct discovery or place witnesses under oath. That right is limited to appeals made to federal employment decisions, and these appeals must be filed with the MSPB.

On December 14, 2007, Mr. Armstrong appealed his removal to the MSPB. Although the Board is notoriously pro-employer,[2] the Agency, following initial discovery but curiously prior to depositions, requested mediation before the Board. The Plaintiff, recognizing the Board's dismal track record on cases such as his where a litigant was raising affirmative defenses of whistleblower reprisal, discrimination, reprisal and violation of Agency practices,[3] agreed to explore mediation.

As a result of that mediation, the parties entered into a written, binding Settlement Agreement. *See,* Exhibit 1. Under the terms of that agreement, the Agency replaced the termination with a thirty-day suspension and agreed to remove all references to termination from its file. *See,* ¶1 of Settlement Agreement. In short, the termination was void ab initio. The only

---

[2] In the words of one expert, "Those employees who cannot avoid the Board use it ... [as] the Board erodes rather than enforces the Whistleblower Protection Act, and the Board's record has been poor relative to enforcement of the civil rights law ... [further] the Board has seemingly gone to considerable trouble to set aside mitigation of adverse actions in those relatively few cases which appellants secure favorable results." Broida, Peter "A Guide to Merit Systems Protection Board Law and Practice." Dewey Publications 2005, Ch. 1, p. 2.

[3] The Board has found for the employee in less than 2% of such appeals. Broida, supra.

reason for the suspension was to be "misuse of government computer and unauthorized access to Agency files for personal use."[4]  *See*, ¶2 of Settlement Agreement.

The Agency was specifically not to provide any information to any third party concerning the rescinded penalty, except where that was required for security clearance matters. *See*, ¶6 of Settlement Agreement. The Agency specifically and explicitly conceded that Mr. Armstrong made no admission of fault or misconduct. *See*, ¶11d of Settlement Agreement. Finally, the Appellant had the right to bring suit for violations of the Privacy Act and the Federal Tort Claims Act. *See*, ¶7 of Settlement Agreement.[5]

The impact of the Settlement Agreement was then to develop an agreed upon set of public facts regarding the Plaintiff and his conduct. Indeed, the Agency included as part of the settlement itself a letter to Agriculture that stated these underlying facts without mentioning the conduct and stating that TIGTA had no opposition to Mr. Armstrong 'assuming a position with your agency." *See*, Creswell letter of February 13, 2008 (Exhibit 2).  Since TIGTA was and is aware the position offered by Agriculture was a law enforcement position, TIGTA implicitly agreed that there was no impediment to Mr. Armstrong performing such duties.

Despite these negotiated facts and a written agreement, the Agency has issued a publicly accessible document in this Court which negates the negotiated settlement in the MSPB and relates irrelevant facts concerning the Plaintiff's alleged misconduct.

---

[4] That use, we should point out, was Mr. Armstrong accessing files pertaining to him and to Mr. Davis' retaliatory attempts to claim Mr. Armstrong had committed criminal violations, a thirty-day suspension for an employee who was already intent on leaving the Agency on the grounds that the employee used government computers for personal use (i.e. checking on retaliation against him and using systems to check automobile prices) was a significant threat for the Agency.)

[5] The allegations against the defendants are two-fold. First, the Agency is alleged to have violated the Privacy Act through the issuance of six letters to Agriculture which contain information maintained in a system or records. Second, the allegation lodged against Mr. Davis relates to the claim that Mr. Armstrong was under criminal investigation [present tense], had committed criminal misconduct and/or had been charged with criminal misconduct. *See*, Complaint ¶80.

The Complaint and any response, then, have little if anything to do with the administrative personnel action brought against the Plaintiff. Yet Defendant's 26(a)(1) disclosure is little more than a gratuitous insertion of allegations that in effect claim Plaintiff made a "disclosure of sensitive information" and may have reviewed information concerning the criminal histories of individuals through the Treasury Enforcement Communications System (TECS).       The disclosures are outrageous on two separate grounds. First, the facts contained in the disclosures are not only untrue, they vary from a negotiated settlement which specified what 'facts" were agreed upon by the parties and stated that only the facts set forth in the letter to Agriculture could be made publicly. Second, the 26(a)(1) disclosure lists witnesses, the apparent substance of whose testimony has nothing to do with the allegations or defenses raised in this case.

The central issue in this case, is the identity of the person or persons who sent letters to Agriculture, the purpose of those submissions and whether they were made via misuse or Privacy Act protected material. A defense to such disclosures would be that: 1) no Agency employee made the disclosure; 2) the information was not Privacy Act protected material; or 3) there had been a waiver of that protection.  With respect to the defamation allegation the only defenses are: 1) whether Mr. Davis sent the letter; 2) whether the allegations of criminality were true; and 3) whether there was an appropriate, legitimate purpose for the letters being sent.

One searches the Agency's submission in vain for any witnesses or information pertaining to the actual issues in this case, with the exception of Mr. Davis himself.  It is only when we get to the "investigation" of Agents O'Malley and Rock that we finally address witnesses who may have information bearing on the case.[6] The remainder of the submission is

---

[6] In its 26(a)(1) disclosure, the Agency raises the ludicrous claim that its investigation into the Privacy Act violation (which if intentional is a crime) is privileged in its entirety, including the statements obtained from the Agents from

simply a character assassination of Mr. Armstrong and a subterfuge to poison the public and

judicial well. As Mr. Armstrong is a law enforcement agent, Agency attorneys knew or should

have known that the disclosure of the "facts" contained in the 26(a)(1) disclosure would serve as

a death knell to his future career prospects. That the submission contains untrue, irrelevant facts

which harm Mr. Armstrong is simply a further illustration of the cavalier, malicious manner in

which the Agency has dealt with the Plaintiff.

We also note that the Agency submission contains the utterly false statement that Plaintiff

has already been provided with copies of the memorandum of interviews conducted by Agents

Rock  and O'Malley.

On February 20, 2008, the Agency specifically refused to produce just these records in

response to Plaintiff's demand under the Privacy Act and the Freedom of Information Act. *See,*

Exhibit 3.

On March 4, 2008, Plaintiff appealed this denial citing applicable case law that the facts

in the investigative reports were not subject to privilege. *See,* Exhibit 4. The Agency has still not

released the records. To claim that Plaintiff has such materials is simply false and shows

Defendant's counsel either was aware of the falsity or was reckless in her assertion.

On Thursday, March 21, 2008, Plaintiff's counsel spoke to Ms. Nasca expressing his

concerns over the Rule 26(a)(1) filing.[7] Plaintiff's counsel expressed grave concern over the

impact of such a submission on Plaintiff's future career and was also troubled by the Agency's

failure to file an accurate pleading. Ms. Nasca stated she had relied on Agency's counsel, Lori

Creswell, for the submission. Plaintiff's counsel pointed out that Ms. Creswell was clearly aware

---

sources outside the Agency. In reality, investigative reports are not privileged, and the statements from employees
are not attorney work-product.
[7] Plaintiff notes that filing was late despite a continuance granted to the Agency by the Court. Since Defendant
already had Plaintiff's submission, the error in filing a false and irrelevant submission is compounded.

of the Settlement Agreement and the agreed upon facts pertaining to Mr. Armstrong since she had authored the agreement. Counsel expressed concerned that the Agency had used the pleading to 'settle the score" with Plaintiff and his attorney for launching an aggressive defense in the administrative action and stated the pleading was being used for an improper purpose and should be withdrawn.

In addition, counsel expressed concern over the fact that the Treasury was now claiming that its agents had contacted Agriculture to discuss Mr. Armstrong's employment and that contact was privileged since it was requested by TIGTA's attorneys (undoubtedly Ms. Creswell). Previously TIGTA had denied any such contact with Agriculture, and Plaintiff's counsel relied on such information in not only negotiating a settlement of the administrative case before the MSPB but in drafting this Compliant. *See*, email exchange of February 5, 2008, between Kevin Byrnes and Lori Creswell (Exhibit 5). Indeed, the Agency consciously left the impression that its only contact with Agriculture had been responsive to a request from Agriculture; and that response was, "no comment." Id.

Ms. Nasca said she would look into counsel's concern and respond to Plaintiff's counsel. That was two weeks ago, and Plaintiff's counsel has heard no further response. Plaintiff's counsel specifically stated to Ms. Nasca that if the pleading was not withdrawn, he would seek appropriate sanctions.

Sanctions are authorized under Federal Rules of Civil Procedure where a party files a pleading which upon reasonable inquiry would have been shown to be groundless, frivolous or is submitted for an improper purpose. FRCP (b)(1); *See*, e.g., <u>Union Planters Bank v. L&J Dev. Co.</u>, 115 F.3d 378, 385 (6th Cir. 1997) (presentation of false deposition testimony to defeat summary judgment); <u>Allen v. Utley</u>, 129 F.R.D.1 (D.D.C. 1990) (lack of reasonable inquiry);

Olivere v. McGraw Edison, 1998 WL 23256 (D.D.C. 1988) (inaccurate, misleading data). Rule 26 and F.R.C.P. 37 also allow for sanctions where a party makes a disclosure as to either witnesses or discovery that is false, misleading or for an improper purpose. *See*, U.S. ex. rel. Fago v. M&T Mortg. Co., 518 F. Supp. 2d 108 (D.D.C. 2007); Perkinson v. Houlihan's/D.C. Inc., 110 F.R.D. 55 (D.D.C. 1985).

The Defendant clearly engaged in sanctionable conduct through its Rule 26 submission (and other conduct). As outlined above, the Defendant submitted a pleading that contained information that is objectively false and which was submitted for an improper purpose, with potentially devastating effects on Mr. Armstrong and his future. A reasonable inquiry by counsel should have disclosed the matters raised in this submission and Agency's counsel ignored Plaintiff's counsel's plea to withdraw the 26(a)(1) disclosure (although even a withdrawal will not undo the damage). The fact that Agency's counsel, who clearly knew better, proffered these facts to Ms. Nasca is of no defense, and heightens Plaintiff's suspicion that the submission was willful and malicious. *See*, Unioil, Inc., v. E.F. Hutton & Co., 809 F.2d 548, 558 (9th Cir. 1986) (counsel may not delegate the duty of "reasonable inquiry" to another attorney).

There is no effective remedy for this violation other than to strike all witnesses proffered by the Agency, other than Agents O'Malley and Rock, as well as to order the Agency to immediately turn over the reports taken by Agents O'Malley and Rock and to disclose communications made to and between TIGTA and Agriculture. Such preclusion and disclosure is necessary to level the playing field and to punish the Agency for its gross violation. Indeed, the pleading and information contained therein amounts to another act of defamation and another violation of the Privacy Act in its own right. Further, whatever qualified privilege exists with

respect to disclosure during litigation, it should be overborne by the sheer malice of the Agency's filing.

In addition to the above, the Court should award Mr. Armstrong monetary sanctions for costs associated with research, preparation and presentation of this motion and for the efforts in attempting to secure the agents' reports which Defendant falsely claims that Plaintiff has. The Court is equally well within its rights to hold a show cause as to why the Agency should not be held in civil contempt for its actions which appear willful and spiteful.

Respectfully submitted,

WILLIAM ARMSTRONG
*Plaintiff by Counsel*

**GRAD, LOGAN & KLEWANS, P.C.**

_____/s/ Kevin Byrnes_____
Kevin Byrnes, DC Bar #480195
3141 Fairview Park Drive, Suite 350
Falls Church, VA 22042
Firm Telephone: 703-548-8400
Direct Line: 703-535-5393
Facsimile: 703-836-6289
kbyrnes@glklawyers.com
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2RD day of April, 2008, a true copy of the foregoing Plaintiff's Motion to Strike Agency's Rule 26(a)(1) Submission; Request for Monetary Sanctions was delivered by filing and entering the same upon the electronic court filing website of the United States District Court of the District of Columbia, to the attention of Defendant's counsel, as follows:

Gerald A. Role, Esq.
Trial Attorney, Tax Division
U. S. Department of Justice
P. O. Box 227
Washington, DC 20044
Telephone: (202) 307-0461
Facsimile:  (202) 514-9641
gerald.a.role@usdoj.gov
*Counsel for Defendant*

_____  /s/ Kevin Byrnes
Kevin Byrnes, DC Bar #480195
GRAD, LOGAN & KLEWANS, P.C.
3141 Fairview Park Drive, Suite 350
Falls Church, VA 22042
Firm Telephone: 703-548-8400
Direct Line:  703-535-5393
Facsimile: 703-836-6289
Email: kbyrnes@glklawyers.com
*Counsel for Plaintiff*

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
WASHINGTON REGIONAL OFFICE

WILLIAM H. ARMSTRONG,
             Appellant,

DOCKET NUMBER
DC-0752-08-0188-I-1

Administrative Judge:
Elizabeth B. Bogle

      v.

DEPARTMENT OF THE TREASURY,
            Agency.

### SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into by and between the Department of the Treasury, Treasury Inspector General for Tax Administration (Agency or TIGTA), and William H. Armstrong (Employee or Appellant).

WHEREAS, by letter dated December 4, 2007, the Agency removed the Appellant from Federal service effective December 11, 2007; and

WHEREAS, by Petition filed on or about December 14, 2007, Appellant appealed the Agency's decision to remove him to the Merit Systems Protection Board (MSPB); and,

WHEREAS the parties are mutually desirous of resolving all their disputes arising from or relating to the Appellant's removal from Federal service, including all claims at issue in the above-captioned proceeding.

IT IS HEREBY AGREED AS FOLLOWS:

1.    The Agency will rescind the proposal memorandum dated September 4, 2007 and decision memorandum dated December 4, 2007. Any and all copies of these memoranda will be removed from the employee's drop file. The Agency will remove from his Official Personnel Folder (OPF), the SF-50 reflecting the employee's termination.

2.  The Agency will impose a thirty (30) calendar day suspension for the conduct as sustained by the Agency in the December 4, 2007 memorandum. The thirty day (30) suspension as listed on the SF-50 will state that the reason for the suspension was misuse of a government computer and unauthorized access to

# Exhibit 1

agency files for personal use.  The Agency will create an SF-50 reflecting the thirty (30) calendar day suspension beginning December 12, 2007, and ending on January 10, 2008.

3.  The Appellant's signature on the settlement agreement will operate as his permanent and unequivocal resignation from employment with TIGTA, effective ninety (90) days from the execution of the settlement agreement, or the day before he begins employment with the USDA or other agency, whichever occurs first.  The Agency will effectuate an SF-50 reflecting the voluntary resignation.

4.  The Agency will place the Appellant in Leave Without Pay (LWOP) status from January 11, 2008, until the effective date of his resignation.

5.  The Appellant agrees not to apply for any position with the Department of the Treasury or any of its bureaus and agencies for a period of ten (10) years from the date of the execution of the settlement agreement.  If he does, he may be terminated and required to repay salary, and he waives any right to appeal the termination.

6.  The Agency will not provide any information to the USDA concerning the rescinded penalty.  The Agency shall advise employees within the Special Inquiries and Intelligence Division (SIID) as follows:  "The matter involving William H. Armstrong has been resolved.  You are advised that you are not to communicate any information collected or obtained in the course of performing your TIGTA duties and responsibilities concerning Mr. Armstrong to any person or entity except as authorized by law or required in connection with your official duties.  All inquiries concerning William H. Armstrong from sources outside of TIGTA, including but not limited to other Federal agencies, should be directed to the Office of Mission Support, Human Capital.  Any employee failing to follow these instructions may be subject to disciplinary action."  With respect to employment inquiries, the Agency will direct all inquiries from prospective employers regarding the Appellant's employment with TIGTA to the Supervisory Human Resources Specialist, Processing Operations Branch, Bureau of Public Debt (SHRS, BPD) at 200 Third Street, Parkersburg, West Virginia 26101 or (304) 480-8276.  Should prospective employers contact the Appellant's supervisors or managers in the Office of Investigations regarding his employment with TIGTA, the prospective employers will be directed to the SHRS, BPD, and no further information will be provided.  The SHRS, BPD will provide prospective employers only the following information concerning the Appellant's employment with TIGTA:  dates of employment, grades and salary levels, and classification series.  If the prospective employer seeks additional information, the employer will be told that no further information may be provided without a written release from the Appellant.  The Appellant may request that this individual provide other employment information to prospective employers by submitting a written release consenting to the provision of other specified information and releasing TIGTA and its employee(s) from liability therewith.  The Appellant understands that this

provision does not preclude the TIGTA Personnel Security Officer or other TIGTA employees from responding fully and truthfully to OPM, the FBI, or any agency with law enforcement authority conducting a suitability or a security clearance background investigation of the Appellant for Federal employment or work on a contract basis. The Agency acknowledges that all such disclosures must be consistent with applicable federal law or written release executed by the Appellant.

7. The Appellant agrees that his execution of this Agreement operates as a complete and voluntary withdrawal, with prejudice, of the appeals and claims in the above-captioned proceeding (docket number DC-0752-08-0188-I-1). Appellant further agrees that he shall not institute any further legal and/or administrative actions against the Agency, its employees or representatives, on the matters at issue, or which might have been at issue, in the above-captioned appeal. This includes a specific waiver of any and all rights or claims for attorney's fees, and for any and all claims that may arise out of the ADEA and the OWBPA. With the exception of the matters at issue, or which could have been at issue, in the above-captioned appeal or the execution of this Agreement, nothing in this agreement shall affect the right of the Appellant to bring suit or seek any legal, statutory or equitable award or remedy for any claims made by the Appellant in any previously or subsequently filed claim under the Federal Tort Claims Act or the Privacy Act. Nor shall this agreement effect any cause of action Appellant may have against any individual on any claim, including any allegation of defamation or tortious interference with employment, arising out of any alleged unauthorized disclosures made to the Department of Agriculture or any third party.

8. For those matters at issue or which could have been at issue in the instant action, the Appellant forever waives any entitlement to benefits, interest, or any other type of relief under the Back Pay Act, 5 U.S.C. § 5596, or other law, rule or regulation in connection with the terms and conditions of this settlement agreement and the resolution of the above-captioned appeal. Nothing in this section shall affect the right of the Appellant to seek any legal, statutory or equitable award or remedy for any claims made by the Appellant in any previously or subsequently filed claim under the Federal Tort Claims Act or the Privacy Act. Nor shall this agreement effect any action Appellant may have against any individual on any claim, including any allegation of defamation or tortious interference with employment, arising out of any alleged unauthorized disclosures made to the Department of Agriculture or any third party.

9.    The parties agree to make this Agreement part of the record in the above-captioned case. Except for a petition for enforcement of the terms of this Agreement, Appellant agrees not to institute any additional administrative or judicial actions, grievances, claims, appeals, or requests for Congressional relief concerning issues related to, arising from, raised, or which could have been raised in the above-captioned appeal or by the execution of this Agreement.

10.   The Agency will mail the letter attached as Exhibit A to Kathy Horsley, Director, Office of Compliance and Integrity, United States Department of Agriculture (USDA), Office of Inspector General.  The Agency will provide the Appellant and his representative with a copy of the letter sent to Ms. Horsley. The Agency will not provide any statement or express any opinion to the USDA concerning the Appellant's ability/inability to testify as a law enforcement officer.

11.   The parties further agree that:

a.  This Agreement is entered into for the parties' mutual benefit and for the sole purpose of resolving the issues and disputes related to the appeal, grievance, and complaint identified in the recitals above, and shall not be considered precedential or binding in any other matter, nor shall the Agreement (or any letters of reference called for hereunder) be used as a basis by the Appellant or the Agency to seek or justify similar terms in any subsequent case.

b.  Appellant acknowledges that the Agency's execution of this Agreement and/or compliance with this Agreement do not constitute an admission of liability, fault, or error by the Agency, its employees or representatives, under or as to any violation of Title VII of the Civil Rights Act of 1964 and 1991, as amended; the Age Discrimination in Employment Act of 1967 (ADEA), as amended; the Rehabilitation Act of 1973, as amended; the Older Workers Benefit Protection Act (OWBPA); the Whistleblower Protection Act, as amended; the Back Pay Act, 5 U.S.C. § 5596; the Constitution of the United States; any other federal or state statute or regulation; or the common law, with respect to any act associated with Appellant's proposed or actual removal from Federal service and TIGTA employment which form the bases of and are at issue in the above-captioned appeal.

c.  The Agency acknowledges that the Appellant's execution of this Agreement and/or compliance with this Agreement does not constitute an admission of liability, fault, or error by the Appellant.

d.  Each party shall bear the party's own attorney fees, costs and disbursements and waives the right to recover same from the other party.  However, a party may seek as a remedy the right to collect attorney's fees and costs for any subsequent action to enforce the terms of this agreement;

e.  This Agreement sets forth the entire agreement between the parties and supersedes any and all prior agreements, understandings and representations, written or oral, between the parties pertaining to the subject matter hereof.  No promises or agreements shall be binding upon the parties unless contained herein or separately agreed to in writing by the parties.

4

f.  This Agreement is a joint product and shall not be construed against any party on the grounds of sole authorship;

g.  This Agreement may be used as evidence in a subsequent proceeding in which either of the parties alleges non-compliance with the Agreement.

h.  Each party shall cooperate and execute or cause the execution of such other and further documents as may be necessary to effectuate the terms of this Agreement.

i.  The parties acknowledge reading this Agreement in its entirety, understanding all its terms and conditions and, having done so, knowingly and freely enter into it without coercion or duress. The Appellant also acknowledges having been given a reasonable amount of time to consider this Agreement and consult with an attorney, if he so desired, before signing it.

j.  Prior to bringing an allegation of non-compliance with this Agreement to the Board, the party who believes that the other party is in possible non-compliance of this Agreement shall give the other party written notice of the possible non-compliance and provide the party ten (10) calendar days in which to cure the alleged non-compliance. The Board shall retain jurisdiction to enforce the terms of the Agreement. In the event of an alleged breach, the party asserting that a breach has occurred may seek reimbursement of all attorney's fees and costs related to the commencement and prosecution of action relating to the alleged breach.

12.    Effective Date of the Settlement Agreement. The effective date of this agreement shall be the date of the last signature thereon.

FOR TIGTA:

Timothy P. Camus
Assistant Inspector General
  for Investigations

2/7/2008
Date

Lori L. Creswell
Assistant Chief Counsel

2/7/2008
Date

FOR APPELLANT:

_William H. Armstrong_
Willam H. Armstrong
Appellant

2/7/08
Date

_Kevin Byrnes_
Kevin Byrnes
Attorney for Appellant

2/7/08
Date

FEB-07-2008 10:14 FROM:GRAD,LOGAN & KLEWANS 703 836 6289     TO:202 927 3621     P.8/8



INSPECTOR GENERAL
FOR TAX
ADMINISTRATION

DEPARTMENT OF THE TREASURY
WASHINGTON, D.C. 20005

[signatory office to enter date]

Kathy Horsley
Director, Office of Compliance and Integrity
U.S. Department of Agriculture Office of Inspector General
Washington DC 20250

Dear Director Horsley:

The Treasury Inspector General for Tax Administration (TIGTA) is in receipt of your January 2, 2008 letter addressed to Lori Creswell, TIGTA Office of Counsel, regarding TIGTA employee William "Harry" Armstrong. In your letter, you advise that Mr. Armstrong was selected for a position with the Department of Agriculture, Office of Inspector General. You have asked that TIGTA respond to several questions in order to obtain information that is needed "to be able to determine if [your office] can complete this selection." Your office previously provided TIGTA with a copy of the Authorization for Release of Information and Declaration for Federal Employment signed by Mr. Armstrong on August 1, 2007. As authorized by the release and declaration provided by your office, as well as TIGTA's routine uses, we offer the following information.

TIGTA's adjudication of the information and evidence collected in connection with a TIGTA investigation involving Mr. Armstrong has been resolved. Mr. Armstrong was suspended from duty and pay for thirty days and remains on the rolls in the position of Assistant Special Agent in Charge. The matter recently resolved was solely administrative in nature. There was no criminal prosecution of the issues addressed by the Agency. The matter adjudicated by the Agency did not involve an issue of officer safety. Mr. Armstrong's Official Personnel Folder (OPF) does not contain any record of disciplinary action other than the matter recently resolved. . TIGTA has no opposition to his assuming a position with your Agency.

Thank you for your inquiry concerning this matter.

Sincerely,

Lori L. Creswell
Associate Chief Counsel

EXHIBIT A to Settlement Agreement



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20005

INSPECTOR GENERAL
FOR TAX
ADMINISTRATION

February 13, 2008

Kathy Horsley
Director, Office of Compliance and Integrity
U.S. Department of Agriculture Office of Inspector General
Washington DC  20250

Dear Director Horsley:

The Treasury Inspector General for Tax Administration (TIGTA) is in receipt of your January 2, 2008 letter addressed to Lori Creswell, TIGTA Office of Counsel, regarding TIGTA employee William "Harry" Armstrong.  In your letter, you advise that Mr. Armstrong was selected for a position with the Department of Agriculture, Office of Inspector General.  You have asked that TIGTA respond to several questions in order to obtain information that is needed "to be able to determine if [your office] can complete this selection."  Your office previously provided TIGTA with a copy of the Authorization for Release of Information and Declaration for Federal Employment signed by Mr. Armstrong on August 1, 2007.  As authorized by the release and declaration provided by your office, as well as TIGTA's routine uses, we offer the following information.

TIGTA's adjudication of the information and evidence collected in connection with a TIGTA investigation involving Mr. Armstrong has been resolved.  Mr. Armstrong was suspended from duty and pay for thirty days and remains on the rolls in the position of Assistant Special Agent in Charge.  The matter recently resolved was solely administrative in nature.  There was no criminal prosecution of the issues addressed by the Agency.  The matter adjudicated by the Agency did not involve an issue of officer safety.  Mr. Armstrong's Official Personnel Folder (OPF) does not contain any record of disciplinary action other than the matter recently resolved.   TIGTA has no opposition to his assuming a position with your Agency.

Thank you for your inquiry concerning this matter.

Sincerely,

Lori L. Creswell
Associate Chief Counsel

# Exhibit 2



**INSPECTOR GENERAL
FOR TAX
ADMINISTRATION**

**DEPARTMENT OF THE TREASURY**

WASHINGTON, D.C. 20005



February 20, 2008

Kevin Byrnes, Esq.
Law Offices of Wade & Byrnes, P.C.
616 North Washington Street
Alexandria, Virginia  22314

Dear Mr. Byrnes:

This is in response to your Freedom of Information Act (FOIA) and Privacy Act request, dated December 7, 2007, submitted on behalf of your client, William H. Armstrong, seeking access to records maintained by the Treasury Inspector General for Tax Administration (TIGTA).  Your e-mail request to Mary Anne Curtin and Lori Creswell was referred to and received in TIGTA's Disclosure Branch for a response on December 7, 2007.

We have construed your request as seeking the following TIGTA records:

1. Copies of any investigation, fact finding, obtaining of information or records collected, produced or maintained by TIGTA that relate or pertain to any claim, allegation or defense raised by either William H. Armstrong or TIGTA in response to the Privacy Act litigation or the Federal Tort Claim Act (FTCA).

2. Copy of the legal authority that authorizes criminal investigators to question employees as it relates to the FTCA claim.

3. Copy of a document retention memorandum issued to Agency employees regarding the Privacy Act litigation and FTCA claim.

It is TIGTA policy to process Privacy Act and FOIA requests under the statute that provides the greatest access to the requested records.  Therefore, we have processed your request under the FOIA.

A review of TIGTA records revealed four hundred and eighty-five (485) pages responsive to your request for information that relates or pertains to the Privacy Act lawsuit involving your client.  We are withholding three hundred and eleven (311) pages in full.  We are asserting the attorney-client, attorney work-product and deliberative process privileges of FOIA subsection (b)(5) and FOIA subsection (b)(6) as the

# Exhibit 3

2

justification for withholding. The information being withheld includes the identities of, and information provided by, third parties and other information generated or collected by TIGTA during the course of its gathering facts necessary to defend the lawsuit. The remaining one hundred and seventy-four (174) pages are Reports of Investigation which were previously provided by TIGTA to your client. If, however, you would like to receive another copy of the documents previously provided, please contact us at the address provided below.

Furthermore, the review of TIGTA records revealed twenty-six (26) pages responsive to the portion of your request for FTCA related documents. We are releasing fourteen (14) pages in full and a copy is enclosed. We are withholding twelve (12) pages in full. We are asserting the deliberative process privilege and the attorney work-product privilege of FOIA subsection (b)(5) as the justification for withholding. The information being withheld consists of draft correspondence to you, on behalf of your client, and e-mail between Counsel attorneys and supervisory reviewers.

In response to your request for the legal authority that authorizes criminal investigators to question employees with respect to an FTCA claim, the FOIA does not require that Federal agencies conduct research on behalf of FOIA requesters or answer questions.

In response to your request for a copy of a document retention memorandum issued to Agency employees regarding the Privacy Act litigation and FTCA claim, we have no records responsive to your request.

FOIA subsection (b)(5) permits an agency to withhold inter-agency or intra-agency information that is considered to be part of the deliberative process. The type of information for which we assert subsection (b)(5) consists of draft memoranda and internal agency documents containing opinions, deliberations and recommendations of Agency employees in connection with their official duties. Such documents are protected from disclosure pursuant to FOIA subsection (b)(5) and the deliberative process privilege. We are also asserting the attorney-client privilege of FOIA subsection (b)(5) for confidential communications between TIGTA Counsel attorneys and their clients. Furthermore, we are asserting the attorney work-product privilege for documents, memoranda, factual material and background information prepared or compiled by an attorney, or other individual working under the direction or supervision of an attorney, in contemplation of litigation.

FOIA subsection (b)(6) permits an agency to withhold information from personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of a third party's personal privacy. Some of the withheld information consists of identifying information of individuals other than your client, including the identities of and information provided by third parties. We have

3

determined that releasing this information would not shed any light into the Agency's performance of its official functions and would result in an invasion into the personal privacy of the individuals whose names and personal information have been withheld.

We have enclosed an Information Sheet that explains the subsections cited as well as your administrative appeal rights. You may appeal this decision within thirty-five (35) days from the date of this letter. Your appeal must be in writing and signed by you. Please address the envelope as follows:

> Freedom of Information Act Appeal
> Treasury Inspector General for Tax Administration
> Attn: IG:CC   Room 700A
> 1125 15th Street, NW
> Washington, DC 20005

If you have any questions concerning this matter, please contact me at (202) 622-4068 and refer to case number 2008-FOI-00062.

Sincerely,

Amy P. Jones
Disclosure Officer

Enclosures

LAW OFFICES

# GRAD, LOGAN & KLEWANS, P.C.

SUITE 350

3141 FAIRVIEW PARK DRIVE

FALLS CHURCH, VIRGINIA 22042

TELEPHONE

(703) 548-8400

FACSIMILE

(703) 836-6289

E-MAIL

glklawyers@glklawyers.com

WEBSITE

WWW.GLKLAWYERS.COM

March 4, 2008

**Via U.S. Mail and Facsimile – 202-622-3339**

Freedom of Information Act Appeal

Treasury Inspector General for Tax Administration

1125 15th Street, N.W.

Washington, DC 20005

Attn: IG:CC Room 700A

    Re: William H. Armstrong, Case No. 2008-FOI-00062

The Honorable Inspector General:

    William H. Armstrong, by and through counsel, hereby appeals the Agency's denial of his Privacy Act request seeking records pertaining to Mr. Armstrong and any investigation of claims Mr. Armstrong has raised on the following grounds:

    The Agency has denied access to Mr. Armstrong's Privacy Act claims based on Subsections (b)(5) and (b)(6) of the Freedom of Information Act.

    The Agency incorrectly lists Subsection (b)(5) by claiming that an Agency sponsored investigation conducted by Special Agents of the Agency to review a potential violation of law, rule or regulation in response to a lawsuit is part of the "deliberative process." The Agency cites no case law or controlling authority for this point (documents pertaining to investigation of specific allegations are not part of routine deliberative process and are not exempt from disclosure), and the law is actually to the contrary. Further, the Agency speciously agrees that such an "investigation" is protected by the attorney client product doctrines, although it was not conducted by attorneys and did not involve the securing of legal advice, but instead was designed to obtain facts. See e.g. Becker v. IRS, 34 F.3d 398 (7th Cir. 1994); Fine v. U.S. Dept. of Energy, Office of Inspector General, 823 F. Supp. 888 (D. MN 1993).

    The attorney client privilege is also inapplicable because the Agency fails to provide a privilege log defining which documents it contends are privileged, nor does it

# Exhibit 4

Freedom of Information Act Appeal
Treasury Inspector General for Tax Administration
March 4, 2008
Page 2

define who the "clients" are. Agency counsel represent the Agency and not individuals, and neither Ms. Creswell nor Ms. Curtin are listed as counsel of record in the suit brought by Mr. Armstrong.

The Agency's (b)(6) claim is simply disingenuous and turns the Privacy Act on its head. The Agency insists that producing records regarding statements taken about an unauthorized disclosure of records concerning Mr. Armstrong would lead to an intrusion of privacy of the persons providing information concerning whether or not they violated Mr. Armstrong's privacy rights.

Mr. Armstrong believes Agency counsel are themselves involved in the violation of his privacy rights and in retaliation for his assertion of those rights. The same office involved in the violation, however, now passes on the legal merits of Mr. Armstrong's request; and despite this clear conflict and the self serving nature of any denial, refuses to provide Mr. Armstrong with records pertaining to him and to the allegations he has raised.

The Agency's action is a clear abuse of discretion and a legally unsupportable act of stonewalling. We demand the Agency release all records and provide a privilege log as to any records it contends are subject to an attorney client or work product privilege.

Should the Agency refuse to produce those records or if the Agency fails to respond within ten days, we will amend our current lawsuit to include the denial. We shall seek all appropriate damages and attorney fees.

You are to preserve all records withheld in their original format.

Sincerely,

Kevin Byrnes

KB/sp
cc:    Ms. Amy P. Jones, Disclosure Officer
       Harry Armstrong

## Kevin Byrnes

**From:**  Creswell Lori L TIGTA [Lori.Creswell@tigta.treas.gov]
**Sent:**  Tuesday, February 05, 2008 3:10 PM
**To:**  Kevin Byrnes
**Subject:** RE: Armstrong v. Dept. of Treasury

We answered your question with regard to "anyone else" (i.e., we answered your question with regard to the Agency). We added the sentence concerning your client, because we have no way of knowing what your client has said to USDA. How is that evasive?

---

**From:** Kevin Byrnes [mailto:kbyrnes@glklawyers.com]
**Sent:** Tuesday, February 05, 2008 3:08 PM
**To:** Creswell Lori L TIGTA
**Subject:** RE: Armstrong v. Dept. of Treasury

That is evasive. The question was directed at anyone else. Are you refusing to answer?

---

**From:** Creswell Lori L TIGTA [mailto:Lori.Creswell@tigta.treas.gov]
**Sent:** Tuesday, February 05, 2008 3:03 PM
**To:** Kevin Byrnes
**Subject:** FW: Armstrong v. Dept. of Treasury

Kevin,

The Agency is not in a position to respond to your question concerning any information that your client may have conveyed to USDA.

In response to your inquiry, as previously indicated, I received a letter from Director Horsley dated January 2, 2008 that we have forwarded to your attention. The letter from Director Horsley referenced Mr. Armstrong and his employment with TIGTA. With the exception of the incoming letter, to which the Agency has not provided a response, subsequent to December 2007, we are unaware of any individual employed by TIGTA who has spoken with or corresponded with Director Horsley.

---

**From:** Kevin Byrnes [mailto:kbyrnes@glklawyers.com]
**Sent:** Tuesday, February 05, 2008 2:11 PM
**To:** Creswell Lori L TIGTA
**Subject:** RE: Armstrong v. Dept. of Treasury

My question is rather straightforward Have you or any member of the Agency been in contact with USDA to discuss Mr. Armstrong, his claims or his employment other than through the response to the letter since December of last year. If so what has been conveyed to USDA and for what purpose. this would go to the issue of whether HArry can expect that there are no communications to undercut his recieving an offer from USDA through TIGTA and that he has a level playing feild.

I intend to get this case resolved. I think the last changes to the letter and my edits to the agreement do that. I understand the Agency is not taking a position on the Giglio issue, however, you would keep him on the roles in his present position. we have spent many hours on this, let us try to get it settled today.

---

**From:** Creswell Lori L TIGTA [mailto:Lori.Creswell@tigta.treas.gov]

# Exhibit 5

**Sent:** Tuesday, February 05, 2008 12:35 PM
**To:** Kevin Byrnes
**Subject:** RE: Armstrong v. Dept. of Treasury

Kevin,

I have not, as an officer of the court, so indicated in your e-mail. I have stated that the only information that was conveyed to USDA by Agency management/officials concerning the proposal or decision memorandum and any disciplinary action is "no comment," "the matter is still pending," and no further information can be provided. As indicated previously, the Agency responded to an August inquiry from Director Horsley. The Agency's response to Director Horsley's August 2007 inquiry is described in the January 2, 2008 letter from Director Horsley (i.e., "the matter was pending" and that no further information could be conveyed).

Based upon the Judge's order in this matter, I do not get the sense that the Judge is extending discovery. As a result, unless a settlement agreement has been executed, I plan on taking Mr. Armstrong's deposition on Monday, February 11, 2008, as noticed (i.e., at 10:00). In addition, unless you cancel the depositions, the Agency will be producing the deponents on the dates and times as previously discussed in the e-mail messages I forwarded to you earlier today.

The Agency does not see a way to address your concerns about the Giglio issue. You will recall that we discussed that issue with the Judge and she recognized that that was a decision that should be left to USDA. It is better for your client's purposes for TIGTA to make no statement concerning Giglio and leave that issue to USDA to decide.

We will review the suggested agreement that you forwarded previously. If you intend to suggest revisions to the draft letter to USDA, kindly forward those as soon as possible as we are not able to complete a settlement without finalizing the language of the letter.

---

**From:** Kevin Byrnes [mailto:kbyrnes@glklawyers.com]
**Sent:** Tuesday, February 05, 2008 11:02 AM
**To:** Creswell Lori L TIGTA
**Subject:** RE: Armstrong v. Dept. of Treasury

On the depositions, I think my secretary sent these out from last week in an effort to be efficient. I intend to try to settle this case and agree that we should extend discovery if that does not occur. Please review this proposal. I think the sticking issue on the letter is addressing in some manner the Giglio issue, which my last draft tried to do but not to place the Agency in a position of saying anything one way or the other. My client had heard that there was additional contact other than the letter sent to USDA and that "counsel were talking to one another". He is obviously concerned. As an officer of the court, I accept your representations that there were no further communications with USDA other than the letter responding to their inquiry.

Lets see if we can wrap this up, there have been numerous drafts and I think we are very close. Call me today at the new number 703 535 5393 if you have any questions.

---

**From:** Creswell Lori L TIGTA [mailto:Lori.Creswell@tigta.treas.gov]
**Sent:** Tuesday, February 05, 2008 8:00 AM
**To:** Kevin Byrnes
**Subject:** FW: Armstrong v. Dept. of Treasury

Kevin,

Attached are the Agency's proposed agreed upon material facts. We would appreciate your comments/input on the agreed upon material facts as our prehearing submissions are due next week.

4/1/2008

Thank you for your attention to this matter.

---

**From:** Creswell Lori L TIGTA
**Sent:** Thursday, January 24, 2008 10:51 AM
**To:** 'Kevin Byrnes'
**Subject:** Armstrong v. Dept. of Treasury

Kevin,

Attached please find a letter pertaining to and including a draft of agreed upon material facts.

<<January 24 letter re Agreed Upon Facts.pdf>>

# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLUMBIA

WILLIAM H. ARMSTRONG, et al.,    )
        Plaintiff,             )
                               )
        v.                    )     Civil Action No. 1:07-cv-01963-JR
                               )
HENRY M. PAULSON, JR., et al.    )
        Defendant.          )
                               )

## <u>ORDER</u>

This matter having come before the Court on this _____ day of April, 2008, and based upon the submissions and arguments of counsel and for good cause shown it is hereby:

ORDERED that the Plaintiff's Motion to Strike Agency's Rule 26(a)(1) Submission is granted; and the Agency is prohibited from calling any witnesses other than Agents Rock and O'Malley in its case in chief, and only on the specific issue of the Privacy Act disclosures and any investigation into those disclosures.

IT IS FURTHER ORDERED that the Agency shall turn over forthwith all documents pertaining to or related to any investigation into the disclosures that are at issue in this suit.

IT IS FURTHER ORDERED that the Agency shall issue an immediate correction to note that its prior submission was inaccurate as to Mr. Armstrong's employment, to reflect that Mr. Armstrong voluntarily resigned from the Agency and is eligible to be employed as a law enforcement agent.

IT IS FURTHER ORDERED that the Plaintiff's Request for Monetary Sanctions is granted. Plaintiff shall submit a Bill of Costs within ten days of this Order.

                                        _____
                                        JAMES ROBERTSON, JR.
                                        UNITED STATES DISTRICT JUDGE