UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Washington, DC

WILLIAM H. ARMSTRONG       )
                                  )
      Plaintiff,                )
                                  )
v.                                   )     Case No:  1:07-cv-01963-JR
                                  )
HENRY M. PAULSON, JR., et al.    )
                                  )
      Defendants.            )

## MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

Comes now William H. Armstrong, by counsel, Kevin Byrnes of Wade & Byrnes P.C., and requests that this court allow Plaintiff to file an amended Complaint which includes various torts that were previously brought to the Plaintiff's attention in an administrative claim and have only now become ripe for adjudication. A copy of the First Amended Complaint is attached hereto as Exhibit 1.

As grounds for this Motion, counsel notes that the Court in an oral hearing conducted April 28, 2008, agreed to allow Plaintiff to amend his Complaint to include tort claims arising out of the actions of Agency personnel against the Plaintiff. The Clerk's office requires that in order to submit the amended Complaint that Plaintiff obtain a written court order to that effect. Plaintiff includes that proposed Order, which reflects the Court's prior ruling and asks that it be now granted.

Respectfully submitted,

WILLIAM H. ARMSTRONG
*Plaintiff by Counsel*

GRAD, LOGAN & KLEWANS, P.C.

_____/s/ Kevin Byrnes_____
Kevin Byrnes, DC Bar #480195
3141 Fairview Park Drive, Suite 350
Falls Church, VA 22042
Firm Telephone:  703-548-8400
Direct Line:  703-535-5393 `
Facsimile:  703-836-6289
kbyrnes@glklawyers.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

        I hereby certify that on this 9th day of June, 2008, a true copy of the foregoing
Motion for Leave to File First Amended Complaint was delivered by electronic email to
the attention of Defendant's counsel, as follows:

Gerald A. Role, Esq.
Trial Attorney, Tax Division
U. S. Department of Justice
P. O. Box 227
Washington, DC 20044
Telephone: (202) 307-0461
Facsimile:  (202) 514-9641
gerald.a.role@usdoj.gov
*Counsel for Defendant*

                            _____/s/ Kevin Byrnes_____

                            Kevin Byrnes, DC Bar #480195
                            GRAD, LOGAN & KLEWANS, P.C.
                            3141 Fairview Park Drive, Suite 350
                            Falls Church, VA 22042
                            Firm Telephone: 703-548-8400
                            Direct Line:  703-535-5393
                            Facsimile: 703-836-6289
                            Email: kbyrnes@glklawyers.com
                            *Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Washington, DC

WILLIAM H. ARMSTRONG            )
9710 Hickoryhurst Drive         )
Baltimore, Maryland  21236      )
                                )
      Plaintiff,          )
                                )
v.                              )    Case No:   1:07-cv-01963-JR
                                )
HENRY M. PAULSON, JR.,          )
Secretary of the Treasury,      )
U. S. Department of the Treasury )
1500 Pennsylvania Avenue, NW    )
Washington, D.C. 20220,         )
                                )
RODNEY DAVIS                    )
Address Unknown,                )
                                )
      and                 )
                                )
OTHER UNNAMED PERSONS           )
                                )
      Defendants.         )
                                )

**FIRST AMENDED COMPLAINT**

      William H. Armstrong, by counsel, Kevin Byrnes of Wade & Byrnes P.C., files

this Complaint alleging the following facts, violations of law and prayer for relief:

**PARTIES**

      1.    Plaintiff:  William H. Armstrong ("Plaintiff" or "Mr. Armstrong") was at

all times relevant to this complaint, employed as a Special Agent with the United States

Treasury Department for TIGTA, Office of Investigations ("TIGTA").

      2.    Defendant:  Henry M. Paulson, Jr., is the Secretary of the Treasury for the

United States Department of the Treasury, and is by law required to be named as a

defendant. On information and belief, the Secretary has no personal knowledge of the events or facts involved in this complaint.

3.    Defendant:  Rodney A. Davis ("Mr. Davis") is employed in TIGTA's Special Inquiries and Intelligence Division ("SIID") as the Special Agent in Charge.  On information and belief, Mr. Davis engaged in intentional tortious conduct involving slander, defamation, intentional interference with prospective employment and intentional infliction of emotional distress.

4.    Defendant: "Other Unnamed Persons" are persons who are believed to have engaged in the unlawful conduct described herein, and who will be identified during discovery in this case.  Upon information and belief, these persons live and/or work at TIGTA.  Plaintiff intends to amend this complaint upon the discovery of their identities.

## VENUE AND JURISDICTION

5.    In engaging in such conduct Mr. Davis acted outside the scope of his employment and may be held individually liable, as well as liable in his professional capacity as an agent of TIGTA.

6.    Jurisdiction in this court is founded under the Privacy Act, 5 U.S.C. § 552a ("the Privacy Act").

7.    Pendent and/or supplemental jurisdiction for the defamation claims in this case which are personal torts against Mr. Davis and Other Unnamed Persons.  28 U.S.C. § 1367.

8.    Jurisdiction is appropriate in the U.S. District Court for the District of Columbia because the U.S. Department of the Treasury is a federal agency.

9.      Jurisdiction is appropriate in the U.S. District Court for the District of Columbia against Defendant Rodney A. Davis and Other Unnamed Persons because the harm suffered occurred in the District of Columbia as a result of communications dispatched, directed and/or received within the District of Columbia.

10.     Venue is proper in the U.S. District Court for the District of Columbia under 5 U.S.C. 522a(g).  Venue is otherwise proper in the U.S. District Court for the District of Columbia because the U.S. Department of the Treasury is located within the District of Columbia, and the other Defendants caused injury in the District of Columbia and are otherwise found within District of Columbia.  See 28 U.S.C. 1391(e).

## FACTS

11.     This is a lawsuit brought pursuant to the Privacy Act against members of the TIGTA's office and for slander and defamation by those officials in their individual capacity.

12.     Mr. Armstrong, a capable law enforcement agent, made the mistake of challenging the actions of Special Agent in Charge Mr. Davis, who thereafter launched a prolonged and malicious three-year campaign of harassment and retaliation designed to ruin the professional and personal reputation of Mr. Armstrong.

13.     Years ago, Mr. Armstrong and Mr. Davis were colleagues and were cordial and had a good working relationship.  On or about April, 2003, Mr. Armstrong was directed to investigate Mr. Davis based upon a report by Mr. Davis that he had lost and/or misplaced his badge and credentials.  As law enforcement agents, the loss or misplacement of a badge and/or credentials are treated as a serious matter.  Since that

investigation, the relations between Mr. Armstrong and Mr. Davis have deteriorated.  Mr. Armstrong was subsequently appointed at Mr. Davis's supervisor.

14.     In the most recent round of malicious attacks, Mr. Davis and Other Unnamed Persons violated their positions as supervisors and law enforcement agents and through access to Mr. Davis' personnel records, disseminated confidential information regarding Plaintiff to potential employers under the *nome de plume* "ANONYMOUS." The "anonymous letters" detailed alleged improprieties by Mr. Armstrong.

15.     When Plaintiff, through counsel, protested these anonymous letters to TIGTA, the Agency sought to terminate Mr. Armstrong.

16.     On or about January 16, 2006, Mr. Armstrong was involved in an automobile accident while operating a government owned vehicle. He was interviewed regarding the accident in March 2006.

17.     At about that time, Mr. Armstrong was diagnosed with leukemia and took leave.  Mr. Davis responded to the revelation by challenging the veracity of Mr. Armstrong's medical information, and the veracity of his diagnosis.

18.     Mr. Davis demanded confidential medical information from Mr. Armstrong well-outside the parameters permitted by law under the Rehabilitation Act of 1973, 29 U.S.C. § 793, et seq. ("the Rehabilitation Act") and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq. ("FMLA").

19.     At about that time, Mr. Armstrong requested telecommuting as a reasonable accommodation for his leukemia.

20.    Mr. Davis summarily denied Mr. Armstrong's request for a reasonable accommodation without investigation or any good faith dialogue about reasonable accommodation.

21.    In February, 2006, Mr. Armstrong was relieved of all of his supervisory duties as a result of his use of leave.

22.    On May 1, 2006, after protest, Mr. Armstrong's duties were reinstated by TIGTA over Mr. Davis's opposition.

23.    After his duties were restored, Mr. Armstrong discovered that other similarly situated persons were permitted to telecommute as an accommodation for disabilities.

24.    On or about August 15, 2006, Mr. Armstrong approached Mr. Davis to discuss the fact that two of his subordinates had gotten married to one another, and sought Mr. Davis' counsel and advice about any potential management issue which may arise by this marriage.

25.    The next day, Mr. Davis accused Mr. Armstrong of spreading rumors and allowed a subordinate of Mr. Armstrong's to personally berate him on the issue.

26.    On or about August 25, 2006, Mr. Armstrong filed a grievance which accused Mr. Davis of improperly punishing him for an automobile accident which occurred on January 16, 2006. Mr. Armstrong's grievance was upheld against the opposition of Mr. Davis.

27.    On or about September 13, 2006, Mr. Armstrong went to Mr. Davis to inform Mr. Davis that Mr. Armstrong would be attending a meeting in the field. Mr. Armstrong found Mr. Davis sound asleep in his office; and rather than disturb and

embarrass Mr. Davis, Mr. Armstrong went to the meeting on his own initiative. The next day Mr. Davis accused Mr. Armstrong of failing to obtain proper approval to attend the meeting.

28.    On September 18, 2006, Mr. Armstrong brought his concerns regarding the harassment by Mr. Davis, the matter of Mr. Davis' falling asleep at his desk, and other management issues to Deputy Inspector General Steven Jones ("DIG Jones"); and on September 19, 2006, this information was also brought to the attention of Assistant Inspector General for Investigations, Michael Delgado, by Mr. Armstrong.

29.    On September 26, 2006, Mr. Davis accused Mr. Armstrong of disloyalty and for his having a conversation with DIG Jones.

30.    On October 17, 2006, Mr. Davis issued an "anonymous" letter accusing Mr. Armstrong of engaging in unauthorized access to Agency computer systems. Mr. Davis then assigned himself as the reporting senior on the investigation.

31.    On October 31, 2006, Mr. Armstrong was informed he was being placed both on administrative leave and under investigation. However, Mr. Armstrong was then reassigned to the Technical Services and Firearms Division and has remained on active duty.

32.    On November 8, 2006, Mr. Davis denied that he knew Mr. Armstrong was under investigation and claimed to Mr. Armstrong that he was surprised by the allegations.

33.    On November 20, 2006, Mr. Armstrong's communications with other employees were restricted.

34.    On November 21, 2006, Agent Steven Spring ("Mr. Spring") informed Mr. Armstrong that IAD investigators were telling employees that Mr. Armstrong was under investigation. Through his representative, Mr. Armstrong protested the disclosure. Nevertheless, additional disclosures concerning Mr. Armstrong were disseminated among TIGTA employees from November 2006, to the present.

35.    The release was not authorized by any provision of law and was done for a malicious purpose.

36.    On March 6, 2007, Assistant Inspector General for Investigations Michael Delgado ("Mr. Delgado") informed Mr. Armstrong that he could communicate only with Mr. Davis or Mr. Delgado regarding office issues.

37.    In early August, 2007, Mr. Armstrong applied for a position with the U.S. Department of Agriculture's Inspector General's Office (USDA IGO) as an Agent.

38.    At the time Mr. Armstrong applied to the USDA IOG, he was a Special Agent with TIGTA.

39.    On August 15, 2007, Mr. Armstrong was advised his application for employment with the USDA IGO was accepted, and he was advised he would begin employment on September 2, 2007.

40.    On or about August 27, 2007, and continuing over the next week, Mr. Davis and others, currently unknown, caused to be issued letters to the various components of the Department of Agriculture, which disparaged Mr. Armstrong by disclosing that he was under investigation by TIGTA and that he had committed violations of law and procedure.

41.     The submission of these letters was intended to and did interfere with Mr.

Armstrong's employment with the Department of Agriculture.

**COUNT ONE:**
**VIOLATION OF PRIVACY ACT 5 U.S.C. § 552a**

42.     Paragraphs 1-41 are re-alleged and incorporated by reference as if fully set

forth herein.

43.     On or about August 24, 2007, Mr. Davis and/or other persons employed

by TIGTA did cause to be submitted to Phyllis Fong ("Ms. Fong"), an employee of the

U.S. Department of Agriculture, confidential information subject to Privacy Act

protections pertaining to Mr. Armstrong.

44.     Exhibit 1 is a true and accurate copy of the disclosure and is incorporated

herein by reference.

45.     The information contained in the disclosure was information maintained

by the Agency under a system of records, retrievable under the name William H.

Armstrong.

46.     The disclosure was intentional and malicious and was designed to and did

interfere with an offer of employment extended by the U. S. Department of Agriculture to

Mr. Armstrong.

47.     As a result of the violation, Mr. Armstrong was harmed and has lost

employment, suffered permanent reputational damage, has been permanently impaired in

his ability to secure future employment and has suffered psychological and emotional

distress as a result.

WHEREFORE, Plaintiff prays for compensatory damages in the amount of two

million dollars, statutory damages as permitted under the Privacy Act, an award of all

attorney fees and costs, and as well all injunctive relief against the Agency as available under the law; including, but not limited to, a correction of the records contained by TIGTA, the expungement of all submissions to the United States Department of Agriculture as identified herein, and all other such equitable and remedial relief called for and available under the Privacy Act.

**COUNT TWO:**
**VIOLATION OF THE PRIVACY ACT 5 U.S.C. § 552a**

48.    Paragraphs 1-47 are re-alleged and incorporated by reference as if fully set forth herein.

49.    On or about August 24, 2007, Mr. Davis and/or other persons employed by TIGTA did cause to be submitted to the USDA, Office of Inspector General, Office of Investigations, confidential information subject to Privacy Act protections pertaining to Mr. Armstrong.

50.    Exhibit 2 is a true and accurate copy of the disclosure and is incorporated herein by reference.

51.    The information contained in the disclosure was information maintained by the Agency under a system of records, retrievable under the name William H. Armstrong.

52.    The disclosure was intentional and malicious and was designed to and did interfere with an offer of employment extended by the U. S. Department of Agriculture to Mr. Armstrong.

53.    As a result of the violation, Mr. Armstrong was harmed and has lost employment, suffered permanent reputational damage, has been permanently impaired in

his ability to secure future employment and has suffered psychological and emotional distress as a result.

WHEREFORE, Plaintiff prays for compensatory damages in the amount of two million dollars, statutory damages as permitted under the Privacy Act, an award of all attorney fees and costs, and as well all injunctive relief against the Agency as available under the law; including, but not limited to, a correction of the records contained by TIGTA, the expungement of all submissions to the United States Department of Agriculture as identified herein, and all other such equitable and remedial relief called for and available under the Privacy Act.

## COUNT THREE:
## VIOLATION OF THE PRIVACY ACT 5 U.S.C. § 552a

54.    Paragraphs 1-53 are re-alleged and incorporated by reference as if fully set forth herein.

55.    On or about August 23, 2007, Mr. Davis and/or Other Unnamed Persons employed by TIGTA did cause to be submitted to Ms. Phyllis Fong of the USDA, Office of Inspector General, with copies to the USDA Hotline, USDA Northwest Region SAC, and USDA-AIG, confidential information subject to Privacy Act protections pertaining to Mr. Armstrong.

56.    Exhibit 3 is a true and accurate copy of the disclosure and is incorporated herein by reference.

57.    The information contained in the disclosure was information maintained by the Agency under a system of records, retrievable under the name William H. Armstrong.

58.     The disclosure was intentional and malicious and was designed to and did interfere with an offer of employment extended by the U. S. Department of Agriculture to Mr. Armstrong.

59.     As a result of the violation, Mr. Armstrong was harmed and has lost employment, suffered permanent reputational damage, has been permanently impaired in his ability to secure future employment and has suffered psychological and emotional distress as a result.

WHEREFORE, Plaintiff prays for compensatory damages in the amount of two million dollars, statutory damages as permitted under the Privacy Act, an award of all attorney fees and costs, and as well all injunctive relief against the Agency as available under the law; including, but not limited to, a correction of the records contained by TIGTA, the expungement of all submissions to the United States Department of Agriculture as identified herein, and all other such equitable and remedial relief called for and available under the Privacy Act.

**COUNT FOUR:**
**VIOLATION OF THE PRIVACY ACT 5USCA § 552a**

60.     Paragraphs 1-59 are re-alleged and incorporated by reference as if fully set forth herein.

61.     On or about August 24, 2007, Mr. Davis and/or other persons employed by TIGTA did cause to be submitted to the USDA, Office of Inspector General, Chief Counsel of the Office of Legal Counsel, confidential information subject to Privacy Act protections pertaining to Mr. Armstrong.

62.     Exhibit 4 is a true and accurate copy of the disclosure and is incorporated herein by reference.

63.    The information contained in the disclosure was information maintained by the Agency under a system of records, retrievable under the name William H. Armstrong.

64.    The disclosure was intentional and malicious and was designed to and did interfere with an offer of employment by the U. S. Department of Agriculture to Mr. Armstrong.

65.    As a result of the violation, Mr. Armstrong was harmed and has lost employment, suffered permanent reputational damage, has been permanently impaired in his ability to secure future employment and has suffered psychological and emotional distress as a result.

WHEREFORE, Plaintiff prays for compensatory damages in the amount of two million dollars, statutory damages as permitted under the Privacy Act, an award of all attorney fees and costs, and as well all injunctive relief against the Agency as available under the law; including, but not limited to, a correction of the records contained by TIGTA, the expungement of all submissions to the United States Department of Agriculture as identified herein, and all other such equitable and remedial relief called for and available under the Privacy Act.

## COUNT FIVE:
## VIOLATION OF THE PRIVACY ACT 5 U.S.C. § 552a

66.    Paragraphs 1-65 are re-alleged and incorporated by reference as if fully set forth herein.

67.    On or about August 23, 2007, Mr. Davis and/or Other Unnamed Persons employed by TIGTA did cause to be submitted to Special Agent in Charge Brian Haaser,

USDA, OIG, Office of Investigations, confidential information subject to Privacy Act protections pertaining to Mr. Armstrong.

68.    Exhibit 5 is a true and accurate copy of the disclosure and is incorporated herein by reference.

69.    The information contained in the disclosure was information maintained by the Agency under a system of records, retrievable under the name William H. Armstrong.

70.    The disclosure was intentional and malicious and was designed to and did interfere with an offer of employment by the U. S. Department of Agriculture to Mr. Armstrong.

71.    As a result of the violation, Mr. Armstrong was harmed and has lost employment, suffered permanent reputational damage, has been permanently impaired in his ability to secure future employment and has suffered psychological and emotional distress as a result.

WHEREFORE, Plaintiff prays for compensatory damages in the amount of two million dollars, statutory damages as permitted under the Privacy Act, an award of all attorney fees and costs, and as well all injunctive relief against the Agency as available under the law; including, but not limited to, a correction of the records contained by TIGTA, the expungement of all submissions to the United States Department of Agriculture as identified herein, and all other such equitable and remedial relief called for and available under the Privacy Act.

## COUNT SIX:
## VIOLATION OF THE PRIVACY ACT 5 U.S.C. § 552a

72.    Paragraphs 1-71 are re-alleged and incorporated by reference as if fully set forth herein.

73.    On or about August 23, 2007, Mr. Davis and/or Other Unnamed Persons employed by TIGTA did cause to be submitted to Assistant Inspector General of Investigations, USDA, OIG, Office of Investigations, confidential information subject to Privacy Act protections pertaining to Mr. Armstrong.

74.    Exhibit 6 is a true and accurate copy of the disclosure and is incorporated herein by reference.

75.    The information contained in the disclosure was information maintained by the Agency under a system of records, retrievable under the name William H. Armstrong.

76.    The disclosure was intentional and malicious and was designed to and did interfere with an offer of employment by the U. S. Department of Agriculture to Mr. Armstrong.

77.    As a result of the violation, Mr. Armstrong was harmed and has lost employment, suffered permanent reputational damage, has been permanently impaired in his ability to secure future employment and has suffered psychological and emotional distress as a result.

WHEREFORE, Plaintiff prays for compensatory damages in the amount of two million dollars, statutory damages as permitted under the Privacy Act, an award of all attorney fees and costs, and as well all injunctive relief against the Agency as available under the law; including, but not limited to, a correction of the records contained by TIGTA, the expungement of all submissions to the United States Department of

Agriculture as identified herein, and all other such equitable and remedial relief called for
and available under the Privacy Act.

## COUNT SEVEN:
## LIBEL BY MR. DAVIS AND OTHER UNNAMED PERSONS

78.    Paragraphs 1-77 are re-alleged and incorporated by reference as if fully set
forth herein.

79.    On or about August 23, 2007, Mr. Davis and/or Other Unnamed Persons
did cause to be sent a defamatory statement to the employees of the U. S. Department of
Agriculture which contained statements including but not limited to those statements
contained in Exhibits 1, 2, 3, 4, 5 and 6, that were and are false, misleading, untrue, were
sent for the purpose of impairing the ability of William H. Armstrong to secure an
extended offer of employment and any future employment, and were designed to and did
damage Mr. Armstrong's personal and professional reputation.

80.    The defamatory statement included an allegation that Mr. Armstrong was
either under criminal investigation, had committed criminal misconduct and/or had been
charged with criminal misconduct.

81.    The defamatory statements were categorically untrue and were known to
be untrue or were made and/or disseminated with a reckless disregard for the truth, when
made and the sender did or should have known of the truthfulness of the statements
contained therein.

82.    The motivation for making these statements and/or disseminating these
statements was malice toward Mr. Armstrong, and the statements were made and/or
disseminated with the intent to defame Mr. Armstrong in his reputation.

83.     As a direct and/or proximate result of these statements and their dissemination, the Plaintiff's reputation was injured which caused a loss of employment and other harm to be determined by a jury.

WHEREFORE, Plaintiff requests compensatory damages and one million dollars, punitive damages in an amount of one million dollars, the payment of attorney fees and costs, and such other relief as the Court may deem just and proper.

## COUNT EIGHT:
## VIOLATION OF THE FEDERAL TORT CLAIMS ACT;
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

84.     Paragraphs 1-83 are re-alleged and incorporated by reference as if fully set forth herein.

85.     On or about August 27, 2007, employees of TIGTA did cause to be filed letters with the Department of Agriculture, and perhaps elsewhere, which were designed to and did intentionally inflict emotional distress on William H. Armstrong.

86.     The assertions contained in the letter were specifically designed to attack Mr. Armstrong's integrity, credibility, mental health, personal and professional reputation, status and abilities as a law enforcement officer.

87.     As a result of the submissions, Mr. Armstrong has suffered loss of employment and severe emotional distress which has affected his family, as well.

88.     Agency officials then used a pre-textual "investigation" to further inflict emotional distress upon Mr. Armstrong by disseminating derogatory and/or private information to co-workers of Mr. Armstrong concerning both the letters and allegations of misconduct purportedly done by Mr. Armstrong.

89.    The "investigation" was allegedly conducted to determine who drafted and sent the letters set forth in Exhibits 1, 2, 3, 4, 5 and 6 to this Complaint.

90.    In reality, however, the "investigation" focused almost exclusively on Mr. Armstrong's behavior, his reputation for truthfulness and his conduct and performance in the workplace.

91.    The "investigation" was in actuality a mechanism for both insuring consistent witness testimony in this case through disparagement of Mr. Armstrong and perhaps not so subtle concern against the witnesses.

92.    The Agency assigned two senior law enforcement agents to the "investigation" for the express purpose of notifying employees of the posture that the Agency was taking and to convey an aura of criminality in Mr. Armstrong's conduct.

93.    The "investigation," therefore, caused Mr. Armstrong emotional distress and was designed to do so.

94.    The submission of the letters was an outrageous act where the sender was well aware of the susceptibility of Mr. Armstrong to harm. This is why the sender chose to include matters that would preclude Mr. Armstrong from obtaining employment and preclude him from serving as a law enforcement officer. The sending of the letters proximately caused the harm to Mr. Armstrong and was, indeed, specifically designed for that purpose.

WHEREFORE, Plaintiff is entitled to damages in the amount of $350,000.00 for pain and suffering, and attorney fees and costs associated with the presentation and prosecution of this action.

## COUNT NINE:
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

95.     Paragraphs 1-94 are re-alleged and incorporated by reference as if fully set forth herein.

96.     Agency employees submitted letters to the Department of Agriculture and perhaps to others out of reckless disregard for the emotional distress such letters would inflict on Mr. Armstrong.

97.     Agency officials then negligently and/or with reckless disregard of the rights of Mr. Armstrong conducted an "investigation" which further disclosed the details of the injurious letters to employees at the Agency.

98.     Agency officials never sought to actually identify the employees responsible for the submission of the letters attached as Exhibits 1, 2, 3, 4, 5 and 6 to this Complaint. The negligent or reckless failure to focus on the alleged reason for the "investigation" resulted in the investigation turning not into a mechanism to determine who had harmed Mr. Armstrong and possibly violated the law but instead into a mechanism to inflict harm on Mr. Armstrong

99.     Further, the submission of the letters was done either in negligent or reckless disregard to Agency regulations and the Privacy Act as they pertain to the disclosure of information concerning Agency employees.

100.    The information contained in the letters was made with a negligent or reckless disregard for the truth.

101.    A reasonable person would determine that the submission of the letters in such circumstances can and would cause emotional distress even were it not specifically intended to do so.

WHEREFORE, Plaintiff is entitled to damages in the amount of $350,000.00 for pain and suffering, and attorney fees and costs associated with the presentation and prosecution of this action.

## COUNT TEN:
## FALSE LIGHT

102.    Paragraphs 1-101 are re-alleged and incorporated by reference as if fully set forth herein.

103.    The information contained in the letters presented Mr. Armstrong in a false light and depicted him as a mentally unstable person, an employee without integrity, an employee who engaged in unusual conduct and an employee who was not qualified and could not perform the essential functions of his employment.

104.    The information was published; that is, it was written and conveyed to third parties.

105.    The information falsely imputed that Mr. Armstrong was unfit to serve as a law enforcement officer, a statement at variance with the fact that he remained in active employment at the time the letters were published.

106.    The letters falsely imputed and claimed that Mr. Armstrong had engaged in criminal misconduct and that he had committed "serious integrity violations which were proven to be true."

107.    The letters falsely imputed and claimed that Mr. Armstrong could not serve as a law enforcement agent because he could not testify in court.

108.    All such statements directly involved Mr. Armstrong.

109.    A reasonable person would find such statements highly offensive.

110.    The information was conveyed so as to become public knowledge and this explains why it was disseminated to six separate officials.

WHEREFORE, Plaintiff is entitled to damages in the amount of $350,000.00 for pain and suffering, actual damages for loss of employment and attorney fees and costs associated with the presentation and prosecution of this action.

## COUNT ELEVEN:
## INVASION OF PRIVACY

111.    Paragraphs 1-110 are re-alleged and incorporated by reference as if fully set forth herein.

112.    The letters at issue involved the public disclosure of private facts.

113.    Though the underlying facts were not true, whether true or not, the disclosure involved matters that were not only subject to statutory protection under the Privacy Act and internal Agency regulations against disclosure, but were clearly matters which, if disclosed, would be highly offensive to the ordinary and reasonable person.

114.    As a result of this invasion, private facts concerning Mr. Armstrong were disclosed for the purpose of specifically reporting embarrassing details concerning Mr. Armstrong.

WHEREFORE, Plaintiff is entitled to damages in the amount of $350,000.00 for pain and suffering, actual damages for loss of employment and attorney fees and costs associated with the presentation and prosecution of this action.

## COUNT TWELVE:
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE
## EMPLOYMENT/CONTRACTUAL RELATIONS

115.    Paragraphs 1-114 are re-alleged and incorporated by reference as if fully set forth herein.

116.    The submission of the letters by unknown employees of the Agency was designed to and did interfere with the prospective employment and contractual relations of William H. Armstrong with the Department of Agriculture.

117.    On information and belief Rodney Davis, David Sutkus, Karen Thompson and others unknown did in combination/or individually submit letters to the Department of Agriculture with knowledge that Mr. Armstrong had obtained not only an offer of employment but a firm start date with Agriculture.

118.    These offending employees were aware of the existence of an employment contract, since they were aware Mr. Armstrong was leaving the Agency to go to the Department of Agriculture.

119.    This knowledge was procured by Rodney Davis on August 16, 2007, when Mr. Armstrong wrote to Mr. Davis stating that he would be leaving TIGTA on August 30, 2007.

120.    On information and belief, Mr. Davis distributed the information to Mr. Sutkus and Ms. Thompson.

121.    Mr. Sutkus and Ms. Thompson, both of whom were Mr. Armstrong's subordinates, had intense personal animus towards Mr. Armstrong.

122.    Mr. Davis, Mr. Sutkus, Ms. Thompson and others unknown were acting outside the scope of and in fact in direct contravention of their duties as employees of Treasury.

123.    Since Mr. Armstrong had announced his departure from Treasury, no valid employment interest existed for Treasury employees to make disclosures to another federal agency.

124.   Indeed, the interference with employment and contractual relations conducted by Mr. Davis, Mr. Sutkus, Ms. Thompson and others unknown acted contrary to Treasury's interests.

125.   As none of these employees were employed by the Department of Agriculture, their disclosures to Agriculture were not within the scope of employment.

126.   As the disclosures were, in fact, done "anonymously" they cannot be said to be within the scope of the writers' employment in any regard.

127.   The submission of the letters and the matters they contained were designed to and did secure a breach of Mr. Armstrong's contractual relations. It was intentional, willful and malicious.

128.   Mr. Armstrong was damaged as a result of these letters.

129.   The actions were so outrageous and extreme as to warrant the imposition of not only actual damages and damages for reputational loss, but punitive damages, as well.

130.   Each and every individual involved should be held jointly and severally liable.

WHEREFORE, Plaintiff is entitled to damages in the amount of $350,000.00 for pain and suffering, actual damages for loss of employment and attorney fees and costs associated with the presentation and prosecution of this action.

Respectfully submitted,

WILLIAM H. ARMSTRONG
*Plaintiff by Counsel*

GRAD, LOGAN & KLEWANS, P.C.

_____/s/ Kevin Byrnes_____
Kevin Byrnes, DC Bar #480195
3141 Fairview Park Drive, Suite 350
Falls Church, VA 22042
Firm Telephone:  703-548-8400
Direct Line:  703-535-5393 `
Facsimile:  703-836-6289
kbyrnes@glklawyers.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of June, 2008, a true copy of the foregoing First Amended Complaint was delivered by electronic email to the attention of Defendant's counsel, as follows:

Gerald A. Role, Esq.
Trial Attorney, Tax Division
U. S. Department of Justice
P. O. Box 227
Washington, DC 20044
Telephone: (202) 307-0461
Facsimile: (202) 514-9641
gerald.a.role@usdoj.gov
*Counsel for Defendant*

_____/s/ Kevin Byrnes_____

Kevin Byrnes, DC Bar #480195
GRAD, LOGAN & KLEWANS, P.C.
3141 Fairview Park Drive, Suite 350
Falls Church, VA 22042
Firm Telephone: 703-548-8400
Direct Line:  703-535-5393
Facsimile: 703-836-6289
Email: kbyrnes@glklawyers.com
*Counsel for Plaintiff*

Dear Ms. Fong,

I am writing this letter to inform you that the USDA is making a grave error by hiring Special Agent William (who goes by the name Harry) Armstrong to work in the Office of Investigations. Harry Armstrong was an Assistant Special Agent in Charge at the Treasury Inspector General for Tax Administration in Washington, D.C. until October 31, 2006 when he was escorted out of the building and forced to turn in his gun, badge, equipment, cell phone, computer and government car keys because he was under investigation for gross misconduct and integrity violations (some of them criminal). He was removed from all managerial and law enforcement duties and sent to another office where he had no access to computer systems, law enforcement sensitive information, etc.

Harry was under internal investigation for accessing sensitive law enforcement information through various databases to obtain information about subordinates, co-workers, friends and various other people for his own personal knowledge. Harry had no official need to know any of this information. He admitted to looking up information on his subordinates, co-workers, etc. Harry was under investigation for looking up ongoing investigations on other employees and passing that information along to his friends at the agency who didn't have a need to know either! At the time the USDA offered Harry a job, the investigation on him had been completed and the allegations of misconduct and integrity violations were proven to be true. At the time, the Treasury Inspector General for Tax Administration was deciding what disciplinary action (I believe termination was being considered) to take against him.

Unfortunately for the USDA, you had no idea of the serious issues of misconduct, integrity violations and unethical behavior concerning Harry and you hired him. Unfortunately for the USDA, Harry is now a liability to your agency. How can you ever have him swear out an affidavit? How can you ever have him testify in court? I can only imagine the giglio-henthorn issues he will create for the USDA. I guess it is true what they say about the government. Instead of dealing with the problem, you pass the problem onto someone else. Well I guess Harry is your problem now.

Sincerely,

A Very Concerned Person





USA FIRST-CLASS FOREVER

SOUTHERN MD 207

24 AUG 2007 PM 5 L

USDA, Office of Inspector General
Room 117-W Jamie Whitten Bldg
1400 Independence Avenue SW
Washington, DC 20250
Attn: Phyllis Fong

20250+0000

PLAINTIFF'S
EXHIBIT
ALL-STATE LEGAL®
#1 - pg2

USDA, Office of Inspector General
Office of Investigations
Room 117-W Jamie Whitten Bldg
1400 Independence Avenue SW
Washington, DC 20250
Attn: Assistant Inspector General for Investigations

To Whom It May Concern:

I am writing this letter to inform you that the USDA is making a grave error by hiring
Special Agent William (who goes by the name Harry) Armstrong to work in the Office of
Investigations. Harry Armstrong was an Assistant Special Agent in Charge at the
Treasury Inspector General for Tax Administration in Washington, D.C. until October
31, 2006 when he was escorted out of the building and forced to turn in his gun, badge,
equipment, cell phone, computer and government car keys because he was under
investigation for gross misconduct and integrity violations (some of them criminal). He
was removed from all managerial and law enforcement duties and sent to another office
where he had no access to computer systems, law enforcement sensitive information,
etc.

Harry was under internal investigation for accessing sensitive law enforcement
information through various databases to obtain information about subordinates, co-
workers, friends and various other people for his own personal knowledge. Harry had
no official need to know any of this information. He admitted to looking up information
on his subordinates, co-workers, etc. Harry was under investigation for looking up
ongoing investigations on other employees and passing that information along to his
friends at the agency who didn't have a need to know either! At the time the USDA
offered Harry a job, the investigation on him had been completed and the allegations of
misconduct and integrity violations were proven to be true. At the time, the Treasury
Inspector General for Tax Administration was deciding what disciplinary action (I
believe termination was being considered) to take against him.

Unfortunately for the USDA, you had no idea of the serious issues of misconduct,
integrity violations and unethical behavior concerning Harry and you hired him.
Unfortunately for the USDA, Harry is now a liability to your agency. How can you ever
have him swear out an affidavit? How can you ever have him testify in court? I can only
imagine the giglio-henthorn issues he will create for the USDA. I guess it is true what
they say about the government. Instead of dealing with the problem, you pass the
problem onto someone else. Well I guess Harry is your problem now.


Sincerely,


A Very Concerned Person





SOUTHERN MD 207

24 AUG 2003 PM 5 T

USDA, Office of Inspector General
Office of Investigations
Room 117-W Jamie Whitten Bldg
1400 Independence Avenue SW
Washington, DC 20250
Attn: Asst IG of Investigations.

20250+0000



PLAINTIFF'S
EXHIBIT
#2 - pg.2
ALL-STATE LEGAL®

USDA, Office of Inspector General
Room 117-W Jamie Whitten Bldg
1400 Independence Avenue SW
Washington, DC 20250

Dear Ms. Fong,

   Your agency has extended an offer for employment to William Armstrong, a criminal investigator with the Treasury Inspector General for Tax Administration. His start date is September 2, 2007.

   On October 31, 2006, Mr. Armstrong was stripped of his law enforcement credentials, government computer and duty weapon and placed in an administrative status. He was removed from his position as an Assistant Special Agent in Charge and "detailed" to another office where he no longer had access to agency records, agency computer systems, case information or law enforcement databases. Mr. Armstrong was under internal investigation by his own agency for suspected violations of both a criminal and administrative nature.

   As of his offer for employment by your agency, Mr. Armstrong's proposed disciplinary action was still being determined by his agency. Fortunately for Mr. Armstrong, he accepted your offer of employment and will now be able to leave his agency with an unblemished personnel record despite having been under investigation for serious integrity violations which were proven to be true.

   By hiring Mr. Armstrong, your agency has opened itself up to potential liability and Giglio/Henthorn issues in the future should Mr. Armstrong ever be called to testify on behalf of your agency in a criminal or civil proceeding.

   Since Mr. Armstrong has chosen to leave the Treasury Inspector General for Tax Administration while under investigation with the threat of termination hanging over his head, he did not have to disclose on any employment applications or forms that he was under investigation by his agency for serious misconduct and other violations. Had your agency known of the circumstances surrounding his departure, your agency would not have made an offer of employment to him.

   If your agency chooses to conduct a background investigation or contact Mr. Armstrong's supervisor or colleagues, you will find that details of his misconduct are well known by many. Mr. Armstrong's supervisor is Special Agent in Charge Rodney Davis. His supervisor can be reached at 202-927-7023.

Cc: USDA Hotline
    USDA Northeast Region SAC
    USDA AIG

SOUTHERN MD 207

23 AUG 2007 PM 4 L

USDA, Office of Inspector General
Room 117-W
Jamie Whitten Bldg
1400 Independence Avenue, SW
Washington, DC 20250
Attention: Phyllis Fong

20250+0000

ALL-STATE LEGAL®

PLAINTIFF'S
EXHIBIT

#3-pg.2

USDA, Office of Inspector General
Office of Legal Counsel
Room 117-W Jamie Whitten Bldg
1400 Independence Avenue SW
Washington, DC 20250
Attn: Chief Counsel

To Whom It May Concern:

I am writing this letter to inform you that the USDA is making a grave error by hiring
Special Agent William (who goes by the name Harry) Armstrong to work in the Office of
Investigations. Harry Armstrong was an Assistant Special Agent in Charge at the
Treasury Inspector General for Tax Administration in Washington, D.C. until October
31, 2006 when he was escorted out of the building and forced to turn in his gun, badge,
equipment, cell phone, computer and government car keys because he was under
investigation for gross misconduct and integrity violations (some of them criminal). He
was removed from all managerial and law enforcement duties and sent to another office
where he had no access to computer systems, law enforcement sensitive information,
etc.

Harry was under internal investigation for accessing sensitive law enforcement
information through various databases to obtain information about subordinates, co-
workers, friends and various other people for his own personal knowledge. Harry had
no official need to know any of this information. He admitted to looking up information
on his subordinates, co-workers, etc. Harry was under investigation for looking up
ongoing investigations on other employees and passing that information along to his
friends at the agency who didn't have a need to know either! At the time the USDA
offered Harry a job, the investigation on him had been completed and the allegations of
misconduct and integrity violations were proven to be true. At the time, the Treasury
Inspector General for Tax Administration was deciding what disciplinary action (I
believe termination was being considered) to take against him.

Unfortunately for the USDA, you had no idea of the serious issues of misconduct,
integrity violations and unethical behavior concerning Harry and you hired him.
Unfortunately for the USDA, Harry is now a liability to your agency. How can you ever
have him swear out an affidavit? How can you ever have him testify in court? I can only
imagine the giglio-henthorn issues he will create for the USDA. I guess it is true what
they say about the government. Instead of dealing with the problem, you pass the
problem onto someone else. Well I guess Harry is your problem now.


Sincerely,


A Very Concerned Person



PLAINTIFF'S
EXHIBIT
#4 - pg.1

USDA, Office of Inspector General
Office of Legal Counsel
Room 117-W, Jamie Whitten Building
1400 Independence Avenue, SW
Washington, DC 20250
Attention: Chief Counsel

AUG 1 8 2007

20250+0000

PLAINTIFF'S
EXHIBIT
#4 - pg 2
ALL-STATE LEGAL®

USDA OIG, Office of Investigations
Northeast Region
5601 Sunnyside Avenue
Suite 2-2230
Beltsville, MD 20705-5300

Dear Mr. Haaser,

Your agency has extended an offer for employment to William Armstrong, a criminal investigator with the Treasury Inspector General for Tax Administration. His start date is September 2, 2007.

On October 31, 2006, Mr. Armstrong was stripped of his law enforcement credentials, government computer and duty weapon and place in an administrative status. He was removed from his position as an Assistant Special Agent in Charge and "detailed" to another office where he no longer had access to agency records, agency computer systems, case information or law enforcement databases. Mr. Armstrong was under internal investigation by his own agency for suspected violations of both a criminal and administrative nature.

As of his offer for employment by your agency, Mr. Armstrong's proposed disciplinary action was still being determined by his agency. Fortunately for Mr. Armstrong, he accepted your offer of employment and will now be able to leave his agency with an unblemished personnel record despite having been under investigation for serious integrity violations which were proven to be true.

By hiring Mr. Armstrong, your agency has opened itself up to potential liability and Giglio/Henthorn issues in the future should Mr. Armstrong ever be called to testify on behalf of your agency in a criminal or civil proceeding.

Since Mr. Armstrong has chosen to leave the Treasury Inspector General for Tax Administration while under investigation with the threat of termination hanging over his head, he did not have to disclose on any employment applications or forms that he was under investigation by his agency for serious misconduct and other violations. Had your agency known of the circumstances surrounding his departure, your agency would not have made an offer of employment to him.

If your agency chooses to conduct a background investigation or contact Mr. Armstrong's supervisor or colleagues, you will find that the details of his misconduct are well known by many. Mr. Armstrong's supervisor is Special Agent in Charge Rodney Davis. His supervisor can be reached at 202-927-7023.

Cc: USDA Hotline
    USDA, Inspector General
    USDA, AIGI



PLAINTIFF'S
EXHIBIT
#5-pg.1
ALL-STATE LEGAL®



USA FIRST-CLASS FOREVER

SOUTHERN MD 207

28 AUG 2007 PM 4 T

USDA OIG, Office of Investigations
Northeast Region
5601 Sunnyside Avenue, Suite 2-2230
Beltsville, MD 20705-5300
Attention:   Special Agent in Charge Brian Haaser

20705450003

PLAINTIFF'S
EXHIBIT

#5 - pg.2

ALL-STATE LEGAL®

USDA OIG, Office of Investigations
Room 117-W Jamie Whitten Bldg
1400 Independence Avenue SW
Washington, DC 20250
Attention: Assistant Inspector General of Investigations

Dear Sir,

Your agency has extended an offer for employment to William Armstrong, a criminal investigator with the Treasury Inspector General for Tax Administration. His start date is September 2, 2007.

On October 31, 2006, Mr. Armstrong was stripped of his law enforcement credentials, government computer and duty weapon and place in an administrative status. He was removed from his position as an Assistant Special Agent in Charge and "detailed" to another office where he no longer had access to agency records, agency computer systems, case information or law enforcement databases. Mr. Armstrong was under internal investigation by his own agency for suspected violations of both a criminal and administrative nature.

As of his offer for employment by your agency, Mr. Armstrong's proposed disciplinary action was still being determined by his agency. Fortunately for Mr. Armstrong, he accepted your offer of employment and will now be able to leave his agency with an unblemished personnel record despite having been under investigation for serious integrity violations which were proven to be true.

By hiring Mr. Armstrong, your agency has opened itself up to potential liability and Giglio/Henthorn issues in the future should Mr. Armstrong ever be called to testify on behalf of your agency in a criminal or civil proceeding.

Since Mr. Armstrong has chosen to leave the Treasury Inspector General for Tax Administration while under investigation with the threat of termination hanging over his head, he did not have to disclose on any employment applications or forms that he was under investigation by his agency for serious misconduct and other violations. Had your agency known of the circumstances surrounding his departure, your agency would not have made an offer of employment to him.

If your agency chooses to conduct a background investigation or contact Mr. Armstrong's supervisor or colleagues, you will find that the details of his misconduct are well known by many. Mr. Armstrong's supervisor is Special Agent in Charge Rodney Davis. He can be reached at 202-927-7023.

Cc: USDA Hotline
    USDA Northeast Region, SAC
    USDA, Inspector General





SOUTHERN MD 207

23 AUG 2007 PM 3 T

USDA OIG, Office of Investigations
Room 117-W
Jamie L. Whitten Building
1400 Independence Avenue SW
Washington, DC 20250-2301
Attention: Asst Inspector General for
Investigations

PLAINTIFF'S
EXHIBIT
ALL-STATE LEGAL®
#6-pg.2

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| WILLIAM H. ARMSTRONG, et al., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07-cv-01963-JR |
| | ) | |
| HENRY M. PAULSON, JR., et al. | ) | |
| Defendant. | ) | |
| | ) | |

## <u>ORDER</u>

This matter having come before the Court on this _____ day of June, 2008, and based upon the submissions and arguments of counsel and for good cause shown it is hereby:

ORDERED that the Plaintiff's be allowed to file his First Amended Complaint.

_____
JAMES ROBERTSON, JR.
UNITED STATES DISTRICT JUDGE